IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CINDY JOHNSON, )<br>)<br>Plaintiff, )<br>) CIVIL ACTION NO.: 1:21-cv-759<br>v. )<br>)<br>THE LINCOLN NATIONAL LIFE )<br>INSURANCE COMPANY, )<br>)<br>Defendant. ) | |

# COMPLAINT

The Plaintiff, Cindy Johnson, does hereby state the following:

### Action

1. This is an action for declaratory, compensatory, and injunctive relief based on the Plaintiff's rights to long term disability income benefits arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et. seq. (hereinafter "ERISA"), and more particularly 29 U.S.C. § 1132(a)(1)(B). The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 1132(e).

### Parties

2. The Plaintiff, Cindy Johnson, is a resident of Forsyth County, North Carolina. At the onset of the Plaintiff's disability, Plaintiff was an "employee" of ITG Holdings USA, Inc., (hereinafter "ITG"), within the meaning of 29 U.S.C. § 1002(6).

1

3. The Defendant, The Lincoln National Life Insurance Company (hereinafter referred to as "Lincoln"), is a corporation or company licensed to transact business in North Carolina. Upon information and belief, Lincoln is generally engaged in the insurance business. As more specifically described below, at all times pertinent to this action, Lincoln insured the Plan which provided long term disability income coverage to the Plaintiff as well as other employees of ITG. Upon information and belief, Lincoln had discretionary authority to administer claims brought under the Plan and was assisted in this process by its agents, affiliates, or subsidiaries. Accordingly, Lincoln is a "fiduciary" of the Plan within the meaning and definition of 29 U.S.C. § 1002(21).

## The Plan

4. Defendant Lincoln entered into an agreement with ITG to provide group long term disability income coverage to its employees. This agreement was formalized in a policy that was issued to ITG under Group Insurance Policy No. 000010185098. The policy and Plan constitute an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1).

5. The Plan, as contained in the written policy identified above, provides that any employee who is disabled due to sickness or injury is, after an "elimination period", entitled to a percentage of his or her basic monthly earnings each month during the period of disability for the "maximum duration of benefits".

6. During her employment with ITG, the Plaintiff participated in the Plan and was, at the time her disability began, a fully vested member of the Plan. Accordingly, Plaintiff was a "participant" of the Plan within the meaning and definition of 29 U.S.C. § 1002(7).

**Facts**

7. The Plaintiff is presently 53 years of age.

8. The Plaintiff worked at ITG continuously and was working as a Training Coordinator when she was forced to stop working on or about July 15, 2015, because of limitations secondary to low back and leg pain.

9. The Plaintiff applied for long term disability benefits through the Defendant and the application was approved with benefits beginning on August 7, 2015.

10. In a letter dated October 22, 2018, the Defendant notified the Plaintiff that her long term disability benefits were not payable beyond November 7, 2018, because the Plaintiff retained the ability to perform the main duties of any occupation so she could return to work as a Membership Secretary, Identification Clerk, or Personnel Clerk.

11. The Plaintiff appealed the Defendant's decision to terminate her long term disability benefits.

12. As part of the appeal process, the Defendant retained Dr. Howard Grattan to review the Plaintiff's medical records. According to the report dated June 5, 2019, Dr. Grattan specializes in physical medicine and rehabilitation as well as skilled pain

3

management. Following his review of the medical records, Dr. Grattan opined that the Plaintiff suffers from "difficulty with ambulation, mild swelling the calf, findings of acute on chronic lumbosacral radiculopathy, cervical radiculopathy, complex regional pain syndrome, and mild carpal tunnel syndrome." Based on these findings, Dr. Grattan opined, among other things, that the Plaintiff could sit "60 minutes continually up to 6 hours per day with the ability to alter or change position" and could occasionally reach below the waist and occasionally reach overhead.

13.     In a letter dated August 12, 2019, the Defendant notified the Plaintiff that her appeal had been denied because she retained that ability to perform sedentary exertion so she could perform the main duties of a Membership Secretary, Identification Clerk, or Personnel Clerk.

14.     In a letter dated January 29, 2020, the Plaintiff appealed the Defendant's decision to terminate her long term disability benefits and requested additional time to submit supporting evidence. On February 17, 2020, the Plaintiff provided the Defendant with the following evidence supporting her claim for long term disability benefits:

    1)     A medical source statement from Dr. Tarsha Garvin dated January 20, 2020, in which Dr. Garvin opined, among other things, that the Plaintiff suffers from pain in her right hip, foot, and leg following a right L4-5 laminectomy, right gluteal medius intramuscular resection, and Achilles tendon repair; that it is reasonable for her to take Dilaudid for the pain and other symptoms and that the medication could have adverse side-effects; and that the Plaintiff

4

could not perform a skilled job due to the chronic pain and side-effects of medication.

2) A vocational opinion from certified rehabilitation consultant Michael Fryar dated February 14, 2020, in which Mr. Fryar opined, among other things, that the Plaintiff would not be able to perform the occupations identified by the Defendant based on the opinions of Drs. Grattan and Garvin; that the Plaintiff could not perform any occupation in the national economy that met the wage requirement based on the opinions of Drs. Grattan and Garvin; and that the Defendant's transferable skills analysis was incorrectly done.

3) Prescriptions for the Plaintiff which documented her use of narcotic pain medication.

15. In a letter dated March 24, 2020, the Defendant notified the Plaintiff that her appeal had been denied because she retained that ability to perform sedentary exertion so she could perform the main duties of a Membership Secretary, Identification Clerk, or Personnel Clerk.

16. The Plaintiff has exhausted all administrative review procedures provided by the Plan.

## Claims for Relief

17. Plaintiff hereby incorporates the foregoing paragraphs as if they were fully set forth herein.

18. As stated above, the medical and other evidence shows that the Plaintiff has been totally disabled from any occupation since November 8, 2018. Accordingly, the

5

Plaintiff is entitled to long term disability income benefits through the maximum duration of the Plan.

19. The Defendant's decisions to terminate the Plaintiff's benefits and to deny her appeals were not reasonable.

20. The Defendant's denial of long term disability benefits to the Plaintiff is a breach of the Plan and the terms of ERISA pursuant to 29 U.S.C. § 1001 et. seq.

21. As a direct and proximate result of the Defendant's breach of the Plan and violation of ERISA, Plaintiff has sustained losses, including the loss of benefits for her long term disability for which she is entitled to reimbursement.

22. Based on the Defendant's decision to terminate the Plaintiff's benefits and to deny her appeals, the Plaintiff is entitled to declaratory and injunctive relief establishing her entitlement to future disability benefits and requiring the Defendant to make such payments on a monthly basis through the maximum benefit period of the Plan.

23. The Plaintiff is entitled to recover her attorney's fees for her representation herein pursuant to 29 U.S.C. § 1132(g).

## Prayer for Relief

WHEREFORE, Plaintiff requests the following relief:

(1) That this Court issue a declaratory judgment that Plaintiff is entitled to long term disability income benefits under the Plan through the maximum benefit period as defined by the Plan;

(2) That Plaintiff recover from the Defendant all benefits to which she is entitled under the Plan;

(3) That Plaintiff recover pre-judgment and post-judgment interest on all amounts recovered herein;

(4) That Plaintiff recover the costs of this action, including reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g); and

(5) That this Court award such other and further relief as it deems just and proper.

This the 30th day of September 2021.

**/s/ John K. Koontz**
John K. Koontz
NC State Bar No.: 22156
Attorney for Plaintiff
Daggett Shuler, Attorneys at Law
2140 Country Club Road
Winston-Salem, NC 27104
Telephone No. (336) 724-1234
E-mail: jkoontz@daggettshulerlaw.com